AMO/RDW 2010R00780
2012R01008
2012R01010
2012R01007

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 12-303 (NLH) |
| v. | : | |
| | : | 18 U.S.C. §§ 1341, 1343, |
| ADAM LACERDA, | : | 1349, 1956(h), 1957(a), |
| a/k/a "Robert Klein," | : | and 2 |
| ASHLEY R. LACERDA, | : | |
| IAN RESNICK, | : | |
| STEVEN COX, | : | S U P E R S E D I N G |
| a/k/a "Steve Coluzzi," | : | I N D I C T M E N T |
| ALFRED GIORDANO, | : | |
| a/k/a "Alex Jordan," | : | |
| FRANCIS SANTORE, | : | RECEIVED |
| a/k/a "Frank Martin," | : | |
| BRIAN CORLEY, | : | JAN 2 3 2013 |
| a/k/a "John Corley," | : | |
| JOSEPH DIVENTI | : | AT 8:30_____M |
| JOSEPH SAXON, | : | WILLIAM T. WALSH |
| GENEVIEVE MANZONI | : | CLERK |

The Grand Jury in and for the District of New Jersey,
sitting in Camden, charges:

## COUNT 1

**(Conspiracy To Commit Mail Fraud And Wire Fraud)**

**The Defendants and Co-conspirators**

1.   At all times relevant to this Superseding Indictment:

(a)   Defendant ADAM LACERDA, a/k/a "Robert Klein,"
resided in New Jersey and was the co-owner of The Vacation
Ownership Group, a/k/a "VO Group LLC" (the "VO Group").

(b)   Defendant ASHLEY R. LACERDA resided in New Jersey
and was the co-owner of the VO Group.

(c)   Defendant IAN RESNICK resided in New Jersey and worked at the VO Group.

(d)   Defendant STEVEN COX, a/k/a "Steve Coluzzi," resided in New Jersey and worked at the VO Group.

(e)   R.B., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey and worked at the VO Group.

(f)   Defendant ALFRED GIORDANO, a/k/a "Alex Jordan," resided in New Jersey and worked at the VO Group.

(g)   Defendant FRANCIS SANTORE, a/k/a "Frank Martin," resided in New Jersey and worked at the VO Group.

(h)   Defendant BRIAN CORLEY, a/k/a "John Corley," resided in New Jersey and worked at the VO Group.

(i)   V.G., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey and worked at the VO Group.

(j)   Defendant JOSEPH SAXON resided in New Jersey and worked at the VO Group.

(k)   A.A., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey and worked at the VO Group.

(l)   Defendant GENEVIEVE MANZONI resided in New Jersey and worked at the VO Group.

(m)   E.R., who is named as a co-conspirator but not as

2

a defendant herein, resided in New Jersey and worked at the VO Group.

(n)  C.B., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey and worked at the VO Group.

(o)  E.K.R., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey and worked at the VO Group.

(p)  Defendant JOSEPH DIVENTI resided in New Jersey and worked at the VO Group.

(q)  N.M., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey and worked at the VO Group.

(r)  J.S., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey and worked at the VO Group.


**The VO Group**

2.  At all times relevant to this Superseding Indictment:

(a)  The VO Group purportedly was a timeshare consulting firm which offered, among other things, timeshare cancellation services and timeshare and vacation ownership purchases and upgrades.

(b)  The VO Group maintained a Post Office Box in

Pleasantville, New Jersey.

(c)   TD Bank, N.A. ("TD Bank") issued a bank account in the name of the VO Group on or about March 27, 2009 (the "VO Group TD Bank Account").

(d)   The Bank issued a bank account in the name of the VO Group on or about November 9, 2010 (the "VO Group The Bank Account").

(e)   The Cape Bank issued a bank account in the name of the VO Group on or about December 9, 2011 (the "VO Group Cape Bank Account").

(f)   Defendants ADAM LACERDA, a/k/a "Robert Klein," and ASHLEY LACERDA had signature authority on the VO Group bank accounts.

## Other Entities

3.   At all times relevant to this Superseding Indictment:

(a)   Wyndham Vacation Resorts Inc. ("Wyndham") was a developer of timeshare resorts.

(b)   Flagship Resort Development Corporation ("Flagship") was a developer of timeshare resorts.

(c)   Bluegreen Corporation ("Bluegreen") was a developer of timeshare resorts.

## Timeshares Generally

4

4.   A timeshare was a form of ownership or right to the use of a vacation or resort property.  These properties were typically resort condominium units, in which multiple parties held rights to use the property, and each timeshare owner was allotted a period of time in which the timeshare owner could use the property.

5.   When an individual purchased a timeshare, the individual often paid by making a down payment on the timeshare and then financed the balance of the purchase price by obtaining a loan.  These loans were deemed "mortgages" in the timeshare industry.

**The Conspiracy**

6.   From in or about March 2009 through on or about September 1, 2011 at Pleasantville, in Atlantic County, in the District of New Jersey, and elsewhere, defendants

ADAM LACERDA,
a/k/a "Robert Klein,"
ASHLEY R. LACERDA,
IAN RESNICK,
STEVEN COX,
a/k/a "Steve Coluzzi,"
ALFRED GIORDANO,
a/k/a "Alex Jordan,"
FRANCIS SANTORE,
a/k/a "Frank Martin,"
BRIAN CORLEY,
a/k/a "John Corley,"
JOSEPH DIVENTI,
JOSEPH SAXON,
and
GENEVIEVE MANZONI

5

did knowingly and intentionally conspire and agree with each

other, with R.B., V.G., A.A., E.R., C.B., E.K.R., N.M., J.S., and

with others to devise a scheme and artifice to defraud, and to

obtain money and property by means of materially false and

fraudulent pretenses, representations, and promises, which scheme

and artifice is set forth below in substance and in part, and for

the purpose of executing such scheme and artifice, (i) to cause

to be placed in a post office and authorized depository for mail,

and cause to be delivered in accordance with directions thereon,

certain mail matter, to be sent and delivered by the United

States Postal Service, contrary to Title 18, United States Code,

Section 1341, and (ii) to transmit and cause to be transmitted by

means of wire communications in interstate commerce, writings,

signs, signals, and sounds, contrary to Title 18, United States

Code, Section 1343.


**Object Of The Conspiracy**

7.   It was the object of the conspiracy that defendants

ADAM LACERDA, a/k/a "Robert Klein," ASHLEY R. LACERDA, IAN

RESNICK, STEVEN COX, a/k/a "Steve Coluzzi," ALFRED GIORDANO,

a/k/a "Alex Jordan," FRANCIS SANTORE, a/k/a "Frank Martin," BRIAN

CORLEY, a/k/a "John Corley," JOSEPH DIVENTI, JOSEPH SAXON,

GENEVIEVE MANZONI, and co-conspirators R.B., V.G., A.A., E.R.,

C.B., E.K.R., N.M., and J.S., acting for their own financial

6

gain, falsely represented that the VO Group could pay off timeshare owners' "mortgages" on their timeshares, have timeshares cancelled, or have the owners' timeshares sold.

## Manner And Means Of The Conspiracy

8.   It was part of the conspiracy that defendants ADAM LACERDA, a/k/a "Robert Klein," IAN RESNICK, STEVEN COX, a/k/a "Steve Coluzzi," ALFRED GIORDANO, a/k/a "Alex Jordan," FRANCIS SANTORE, a/k/a "Frank Martin," BRIAN CORLEY, a/k/a "John Corley," JOSEPH DIVENTI, JOSEPH SAXON, and GENEVIEVE MANZONI, and co-conspirators R.B., V.G., A.A., E.R., C.B., E.K.R., N.M., and J.S. falsely represented to owners of timeshare vacation properties purchased from Bluegreen, Flagship, and Wyndham that the VO Group

(a)   could pay off the owners' timeshare mortgages;

(b)   could have the owners' timeshares cancelled or sold;

(c)   received a complaint previously filed by the owner that was forwarded to the VO Group for investigation;

(d)   worked with banks and lending institutions;

(e)   had the ability to "settle" or pay off a timeshare owner's mortgage for a fraction of the owner's current mortgage balance; and

(f)   would negotiate with, and send letters and other

7

cancellation documentation to, the timeshare developer, loan holder, or other merchant on the owner's behalf.

9.  It was further part of the conspiracy that defendants ADAM LACERDA, a/k/a "Robert Klein," IAN RESNICK, STEVEN COX, a/k/a "Steve Coluzzi," ALFRED GIORDANO, a/k/a "Alex Jordan," FRANCIS SANTORE, a/k/a "Frank Martin," BRIAN CORLEY, a/k/a "John Corley," JOSEPH DIVENTI, JOSEPH SAXON, GENEVIEVE MANZONI, and co-conspirators R.B., V.G., A.A., E.R., C.B., E.K.R., N.M., and J.S. falsely represented to the timeshare owners that their credit would not be damaged by cancelling their timeshare mortgages.

10.  It was further part of the conspiracy that defendants ADAM LACERDA, a/k/a "Robert Klein," IAN RESNICK, STEVEN COX, a/k/a "Steve Coluzzi," ALFRED GIORDANO, a/k/a "Alex Jordan," FRANCIS SANTORE, a/k/a "Frank Martin," BRIAN CORLEY, a/k/a "John Corley," JOSEPH DIVENTI, JOSEPH SAXON, GENEVIEVE MANZONI, and co-conspirators R.B., V.G., A.A., E.R., C.B., E.K.R., N.M., and J.S. failed to tell timeshare owners that only the timeshare developer had the ability to cancel a timeshare mortgage.

11.  It was further part of the conspiracy that defendant ASHLEY R. LACERDA sent contracts to the timeshare owners which purportedly described the "services" the VO Group was providing.

12.  It was further part of the conspiracy that defendants ADAM LACERDA, a/k/a "Robert Klein," IAN RESNICK, STEVEN COX,

8

a/k/a "Steve Coluzzi," ALFRED GIORDANO, a/k/a "Alex Jordan,"
FRANCIS SANTORE, a/k/a "Frank Martin," BRIAN CORLEY, a/k/a "John
Corley," JOSEPH DIVENTI, JOSEPH SAXON, GENEVIEVE MANZONI, and co-
conspirators R.B., V.G., A.A., E.R., C.B., E.K.R., N.M., and J.S.
caused timeshare owners to send the VO Group money purportedly to
pay off the owners' timeshare mortgages, or have the owners'
timeshares cancelled or sold.

13.  It was further part of the conspiracy that defendants
ADAM LACERDA, a/k/a "Robert Klein," and ASHLEY R. LACERDA
deposited funds received from the timeshare owners into the VO
Group bank accounts.

14.  It was further part of the conspiracy that defendants
ADAM LACERDA, a/k/a "Robert Klein," and ASHLEY R. LACERDA
diverted the money received from the timeshare owners to their
personal use.  Defendants ADAM LACERDA, a/k/a "Robert Klein," and
ASHLEY R. LACERDA also paid a portion of the funds received from
the timeshare owners to defendants IAN RESNICK, STEVEN COX, a/k/a
"Steve Coluzzi," ALFRED GIORDANO, a/k/a "Alex Jordan," FRANCIS
SANTORE, a/k/a "Frank Martin," BRIAN CORLEY, a/k/a "John Corley,"
JOSEPH DIVENTI, JOSEPH SAXON, and GENEVIEVE MANZONI, and co-
conspirators R.B., V.G., A.A., E.R., C.B., E.K.R., N.M., and J.S.

15.  It was further part of the conspiracy that, as a result
of the above acts, defendants ADAM LACERDA, a/k/a "Robert Klein,"
ASHLEY R. LACERDA, IAN RESNICK, STEVEN COX, a/k/a "Steve

9

Coluzzi," ALFRED GIORDANO, a/k/a "Alex Jordan," FRANCIS SANTORE,

a/k/a "Frank Martin," BRIAN CORLEY, a/k/a "John Corley," JOSEPH

DIVENTI, IAN RESNICK, JOSEPH SAXON, and GENEVIEVE MANZONI, and

co-conspirators R.B., V.G., A.A., E.R., C.B., E.K.R., N.M., and

J.S. defrauded victims of more than $3 million dollars.


**Furthering The Conspiracy**

16.   In furtherance of the conspiracy and to effect its

objects, its members committed and caused to be committed the

following acts:

a.   On or about March 10, 2010, defendant ADAM

LACERDA, a/k/a "Robert Klein," caused AF to mail a $34,663 check

to the VO Group.

b.   On or about April 17, 2010, defendant ASHLEY R.

LACERDA caused TC to email a signed VO Group Purchase Agreement

to the VO Group.

c.   On or about April 25, 2010, defendant ADAM

LACERDA, a/k/a "Robert Klein," and co-conspirator R.B. caused the

VO Group to process $23,339.96 in credit card transactions from

EC to the VO Group.

d.   On or about May 17, 2010, defendants ADAM LACERDA,

a/k/a "Robert Klein," and BRIAN CORLEY, a/k/a "John Corley,"

caused CS-2 to mail a $25,000 check to the VO Group.

e.   On or about May 27, 2010, defendant ADAM LACERDA,

10

a/k/a "Robert Klein," and defendant JOSEPH SAXON caused GN to mail a $5,954 check to the VO Group.

      f.    On or about May 28, 2010, defendant JOSEPH SAXON caused CH to mail a $5,925 check to the VO Group.

      g.    On or about June 4, 2010, defendant ALFRED GIORDANO, a/k/a "Alex Jordan," and defendant JOSEPH SAXON caused RM to mail a $6,545 check to the VO Group.

      h.    On or about July 15, 2010, defendant ADAM LACERDA, a/k/a "Robert Klein," and co-conspirator R.B. caused CS-1 to mail an $18,000 check to the VO Group.

      i.    On or about July 16, 2010, defendants ADAM LACERDA, a/k/a "Robert Klein," and ALFRED GIORDANO, a/k/a "Alex Jordan," caused ES to mail a $41,777 check to the VO Group.

      j.    On or about July 21, 2010, defendant ADAM LACERDA, a/k/a "Robert Klein," and co-conspirators V.G. and A.A. caused DGy to mail a $9,177 check to the VO Group.

      k.    On or about July 29, 2010, defendant ASHLEY R. LACERDA and co-conspirator V.G. caused PL to mail an $11,177 check to the VO Group.

      l.    On or about August 9, 2010, defendants ADAM LACERDA, a/k/a "Robert Klein," and ALFRED GIORDANO, a/k/a "Alex Jordan," caused RS to mail a $19,777 check to the VO Group.

      m.    On or about August 15, 2010, defendant ADAM LACERDA, a/k/a "Robert Klein," and co-conspirator V.G. called DJ

and claimed that the VO Group could negotiate a lower payoff
price on DJ's timeshare.

      n.  On or about September 3, 2010, defendant ADAM
LACERDA, a/k/a "Robert Klein," and co-conspirator V.G. caused DJ
to mail a $31,829 check to the VO Group.

      o.  On or about September 3, 2010, co-conspirator V.G.
emailed WM and proposed to pay off WM's timeshare mortgage for
$11,232.

      p.  On or about September 8, 2010, defendant IAN
RESNICK emailed RB and claimed defendant IAN RESNICK had spoken
with the bank holding RB's timeshare and secured a price of
$11,500 to settle RB's timeshare mortgage.

      q.  On or about September 9, 2010, defendant ASHLEY R.
LACERDA and co-conspirator C.B. caused PW to email a signed VO
Group Purchase Agreement to the VO Group.

      r.  On or about September 17, 2010, defendant STEVEN
COX, a/k/a "Steve Coluzzi," caused CS to mail a $9,180 check to
the VO Group.

      s.  On or about September 27, 2010, co-conspirator
V.G. caused WM to mail an $11,232 check to the VO Group.

      t.  On or about September 29, 2010, defendant STEVEN
COX, a/k/a "Steve Coluzzi," emailed NP and provided the VO
Group's mailing address so that NP could send $26,585 to the VO
Group.

u.   On or about September 29, 2010, defendant ADAM LACERDA, a/k/a "Robert Klein," and co-conspirators E.K.R. and R.B. caused SK to mail a $21,328.38 check to the VO Group.

v.   On or about September 30, 2010, defendant JOSEPH DIVENTI and co-conspirator R.B. caused CL to mail a $1,040 check to the VO Group.

w.   On or about October 4, 2010, defendant IAN RESNICK caused RB to mail a $3,000 check to the VO Group.

x.   On or about October 6, 2010, defendants ASHLEY R. LACERDA and BRIAN CORLEY, a/k/a "John Corley," caused SF to email a signed VO Group Purchase Agreement to the VO Group.

y.   On or about October 7, 2010, defendant GENEVIEVE MANZONI called JW and said that the VO Group could buy JW out of JW's existing timeshare and transfer JW's ownership to a different timeshare.

z.   On or about October 10, 2010, defendant ASHLEY R. LACERDA caused JP to email a signed VO Group Purchase Agreement to the VO Group.

aa.   On or about October 13, 2010, defendant ADAM LACERDA, a/k/a "Robert Klein," called JW to convince JW to have $11,236 sent to the VO Group.

bb.   On or about October 14, 2010, defendant STEVEN COX, a/k/a "Steve Coluzzi," emailed CS-1 and claimed that the VO Group would have CS-1's timeshare cancelled and have Wyndham

13

refund CS-1 money.

        cc.  On or about October 14, 2010, co-conspirator E.R. emailed DA and provided "references" DA could call to verify the VO Group's credibility.

        dd.  On or about October 22, 2010, co-conspirators E.R. and A.A. caused DA to mail a $31,385 check to the VO Group.

        ee.  On or about October 24, 2010, defendant ASHLEY R. LACERDA caused RT to email a signed VO Group Purchase Agreement to the VO Group.

        ff.  On or about October 27, 2010, defendant IAN RESNICK emailed DGe and directed DGe where to send DGe's $14,500 check to the VO Group.

        gg.  On or about November 2, 2010, defendant ASHLEY R. LACERDA and co-conspirator C.B. caused ES to email a signed VO Group Purchase Agreement to the VO Group.

        hh.  On or about January 22, 2011, co-conspirator CB emailed JL and said that the VO Group's committee was meeting Wednesday at 3 and CB scheduled JL's case to be heard.

        ii.  On or about March 14, 2011, co-conspirator CB and defendant IAN RESNICK caused JL to mail a check to the VO Group for $1,250.

        jj.  On or about January 23, 2011, co-conspirator E.K.R. called KB on the telephone and said that the VO Group could get her out of her Wyndham timeshare and get her money

refunded by Wyndham.

kk.   Co-conspirator E.K.R. caused KB to send a $5,000.00 check to the VO Group, which was deposited into the VO Group bank account on or about February 28, 2011.


In violation of Title 18, United States Code, Section 1349.

<u>COUNTS 2 - 20</u>

(Mail Fraud)

1.    Paragraphs 1 through 5, and 7 through 16 of Count 1 of this Superseding Indictment are hereby realleged and incorporated as though set forth in full herein.

2.    On or about the dates listed below, at Pleasantville, in Atlantic County, in the District of New Jersey and elsewhere, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, the defendant specified per count below did knowingly and with fraudulent intent cause to be placed in a post office and authorized depository for mail, and cause to be delivered in accordance with directions thereon, certain mail matter as more fully described below, to be sent and delivered by the United States Postal Service, for the purpose of executing such scheme and artifice:

| <u>COUNT</u> | <u>DEFENDANT</u> | <u>DATE</u> | <u>FROM</u> | <u>TO</u> | <u>ITEM</u> |
|---|---|---|---|---|---|
| 2 | ADAM LACERDA, a/k/a "Robert Klein" | 3/5/10 | Purdys, NY | The VO Group, NJ | $34,663 AF check to the VO Group |

16

| COUNT | DEFENDANT | DATE | FROM | TO | ITEM |
|---|---|---|---|---|---|
| 3 | ADAM LACERDA, a/k/a "Robert Klein"<br><br>BRIAN CORLEY, a/k/a "John Corley" | 5/17/10 | Jeffersonville, IN | The VO Group, NJ | $25,000 CS-2 check to the VO Group |
| 4 | ADAM LACERDA, a/k/a "Robert Klein" | 5/27/10 | Lakewood, NJ | The VO Group, NJ | $5,954 GN check to the VO Group |
| 5 | ALFRED GIORDANO, a/k/a "Alex Jordan" | 6/4/10 | Lakewood, NJ | The VO Group, NJ | $6,545 RM check to the VO Group |
| 6 | ADAM LACERDA, a/k/a "Robert Klein" | 7/15/10 | Sturgis, KY | The VO Group, NJ | $18,000 CS-1 check to the VO Group |
| 7 | ADAM LACERDA, a/k/a "Robert Klein"<br><br>ALFRED GIORDANO, a/k/a "Alex Jordan" | 7/16/10 | Randolph, WI | The VO Group, NJ | $41,777 ES check to the VO Group |

17

| COUNT | DEFENDANT | DATE | FROM | TO | ITEM |
|-------|-----------|------|------|-----|------|
| 8 | ADAM LACERDA, a/k/a "Robert Klein" | 7/21/10 | Laurel, MD | The VO Group, NJ | $9,177 DGy check to the VO Group |
| 9 | ASHLEY R. LACERDA | 7/29/10 | Simpsonville, SC | The VO Group, NJ | $11,177 PL check to the VO Group |
| 10 | ADAM LACERDA, a/k/a "Robert Klein"<br><br>ALFRED GIORDANO, a/k/a "Alex Jordan" | 8/9/10 | Poneto, IN | The VO Group, NJ | $19,777 RS check to the VO Group |
| 11 | ADAM LACERDA, a/k/a "Robert Klein" | 9/3/10 | Anderson, IN | The VO Group, NJ | $31,829 DJ check to the VO Group |
| 12 | STEVEN COX, a/k/a "Steve Coluzzi" | 9/17/10 | Poughkeepsie, NY | The VO Group, NJ | $9,180 CS-1 check to the VO Group |
| 13 | ADAM LACERDA, a/k/a "Robert Klein" | 9/29/10 | Cross Lanes, WV | The VO Group, NJ | $21,328.38 SK check to the VO Group |
| 14 | JOSEPH DIVENTI | 9/30/10 | Altoona, PA | The VO Group, NJ | $1,040 CL check to the VO Group |
| 15 | JOSEPH SAXON | 5/27/10 | Lakewood, NJ | The VO Group, NJ | $5,954 GN check to the VO Group |

18

| 16 | JOSEPH SAXON | 5/29/10 | Sayreville, NJ | The VO Group, NJ | $5,925 CH check to the VO Group |
| 17 | JOSEPH SAXON | 6/4/10 | Lakewood, NJ | The VO Group, NJ | $6,545 RM check to the VO Group |
| 18 | IAN RESNICK | 10/5/10 | Atlanta, GA | The VO Group, NJ | $3,000 RB check to the VO Group |
| 19 | GENEVIEVE MANZONI | 10/14/10 | Tiger, GA | The VO Group, NJ | $6,236 check and $5,000 check on behalf of JW to the VO Group |
| 20 | IAN RESNICK | 10/27/10 | Portland, OR | The VO Group, NJ | $14,500 DGe check to the VO Group |

In violation of Title 18, United States Code, Section 1341,
and Title 18, United States Code, Section 2.

19

## COUNTS 21 - 34

### (Wire Fraud)

1.    Paragraphs 1 through 5, and 7 through 16 of Count 1 of this Superseding Indictment are hereby realleged and incorporated as though set forth in full herein.

2.    On or about the dates listed below, in Atlantic County, in the District of New Jersey and elsewhere, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, the defendant specified per count below, for the purpose of executing such scheme and artifice, did knowingly and with fraudulent intent transmit and cause to be transmitted by means of wire communications in interstate commerce the following writings, signs, signals, pictures, and sounds:

| COUNT | DEFENDANT | DATE | FROM | TO | WIRE TRANSMISSION |
|---|---|---|---|---|---|
| 21 | ASHLEY R. LACERDA | 4/17/10 | TC, Orangevale, CA | The VO Group, NJ | Email transmitting VO Group Purchase Agreement |
| 22 | ADAM LACERDA, a/k/a "Robert Klein" | 4/25/10 | The VO Group, NJ | AMEX, Phoenix, AZ | $23,339.96 in credit card transactions from EC |

20

| COUNT | DEFENDANT | DATE | FROM | TO | WIRE TRANSMISSION |
|-------|-----------|------|------|-----|-------------------|
| 23 | ADAM LACERDA, a/k/a "Robert Klein" | 8/15/10 | The VO Group, NJ | DJ, Anderson, IN | Telephone call re: VO Group could negotiate lower payoff price on DJ's timeshare |
| 24 | ASHLEY R. LACERDA | 9/9/10 | PW, Johnstown, PA | The VO Group, NJ | Email transmitting VO Group Purchase Agreement |
| 25 | STEVEN COX, a/k/a "Steve Coluzzi" | 9/29/10 | The VO Group, NJ | Leesburg, VA | Email re: providing VO Group mailing address for NP to send $26,585 to the VO Group |
| 26 | ASHLEY R. LACERDA<br><br>BRIAN CORLEY, a/k/a "John Corley" | 10/6/10 | SF, Naples, FL | The VO Group, NJ | Email transmitting VO Group Purchase Agreement |
| 27 | ASHLEY R. LACERDA | 10/10/10 | JP, Nebo, KY | The VO Group, NJ | Email transmitting VO Group Purchase Agreement |
| 28 | ADAM LACERDA, a/k/a "Robert Klein" | 10/13/10 | The VO Group, NJ | JW, Clayton, GA | Telephone call re: convincing JW to send $11,236 to the VO Group |

21

| COUNT | DEFENDANT | DATE | FROM | TO | WIRE TRANSMISSION |
|---|---|---|---|---|---|
| 29 | STEVEN COX, a/k/a "Steve Coluzzi" | 10/14/10 | The VO Group, NJ | CS-1, Poughkeepsie, NY | Email re: VO Group will have CS-1's timeshare cancelled and have Wyndham refund CS-1 money |
| 30 | ASHLEY R. LACERDA | 10/24/10 | RT, Derwood, MD | The VO Group, NJ | Email transmitting VO Group Purchase Agreement |
| 31 | ASHLEY R. LACERDA | 11/2/10 | ES, Hickory, NC | The VO Group, NJ | Email transmitting VO Group Purchase Agreement |
| 32 | IAN RESNICK | 9/8/10 | The VO Group, NJ | RB, Atlanta, Georgia | Email re: VO Group spoke to bank and secured a price of $11,500 to settle RB's account |
| 33 | IAN RESNICK | 9/29/10 | The VO Group, NJ | RB, Atlanta, Georgia | Email re: providing VO Group mailing address for RB to send $11,500 to the VO Group |
| 34 | IAN RESNICK | 10/27/10 | The VO Group, NJ | DGe, Portland, Oregon | Email re: providing VO Group mailing address for DGe to send $14,500 check to the VO Group |

22

In violation of Title 18, United States Code, Section 1343, and Title 18, United States Code, Section 2.

23

<u>COUNT 35</u>

(Conspiracy To Commit Money Laundering)

1.     Paragraphs 1 through 5 and 7 through 16 of Count 1 of this Superseding Indictment are hereby realleged and incorporated as though set forth in full herein.

2.     From on or about February 19, 2009 through on or about December 16, 2011 in Atlantic County, in the District of New Jersey, and elsewhere, defendants

ADAM LACERDA,
a/k/a "Robert Klein," and
ASHLEY R. LACERDA

did knowingly conspire with each other and with others to engage in monetary transactions, namely, deposits, withdrawals, transfers and exchanges of U.S. currency and monetary instruments, through financial institutions affecting interstate commerce, in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, namely, conspiracy to commit mail fraud and wire fraud, contrary to Title 18, United States Code, Section 1957.

3.     As part of the conspiracy, defendants ADAM LACERDA, a/k/a "Robert Klein," and ASHLEY R. LACERDA deposited into the VO Group bank accounts money sent to the VO Group by timeshare owners purportedly to pay off the timeshare owners' timeshare mortgages, or to have the owners' timeshares cancelled or sold.  Once the funds were deposited, defendants ADAM LACERDA,

24

a/k/a "Robert Klein," and ASHLEY R. LACERDA transferred a portion of the proceeds from the fraud to their personal bank accounts.

    4.    As further part of the conspiracy, defendants ADAM LACERDA, a/k/a "Robert Klein," and ASHLEY R. LACERDA caused the following transfers for the following approximate amounts:

| DATE OF MONETARY TRANSACTION | TRANSFER FROM: | INTO: | AMOUNT | RECEIVED BY |
|---|---|---|---|---|
| 2/19/10 | VO Group TD Bank Account | Personal Checking Account | $10,000.00 | ADAM LACERDA, a/k/a "Robert Klein" <br><br> ASHLEY R. LACERDA |
| 3/19/10 | VO Group TD Bank Account | Personal Checking Account | $10,000.00 | ADAM LACERDA, a/k/a "Robert Klein" <br><br> ASHLEY R. LACERDA |
| 4/5/10 | VO Group TD Bank Account | Personal Checking Account | $10,000.00 | ADAM LACERDA, a/k/a "Robert Klein" <br><br> ASHLEY R. LACERDA |
| 4/5/10 | VO Group TD Bank Account | Personal Savings Account | $10,000.00 | ADAM LACERDA, a/k/a "Robert Klein" <br><br> ASHLEY R. LACERDA |
| 6/4/10 | VO Group TD Bank Account | Personal Checking Account | $10,000.00 | ADAM LACERDA, a/k/a "Robert Klein" <br><br> ASHLEY R. LACERDA |
| 6/14/10 | VO Group TD Bank Account | Personal Checking Account | $10,000.00 | ADAM LACERDA, a/k/a "Robert Klein" <br><br> ASHLEY R. LACERDA |

| DATE OF MONETARY TRANSACTION | TRANSFER FROM: | INTO: | AMOUNT | RECEIVED BY |
|---|---|---|---|---|
| 7/7/10 | VO Group TD Bank Account | Personal Checking Account | $10,000.00 | ADAM LACERDA, a/k/a "Robert Klein"<br><br>ASHLEY R. LACERDA |
| 8/2/10 | VO Group TD Bank Account | Personal Savings Account<br><br>Personal Checking Account | $20,000.00<br><br>$10,000.00 | ADAM LACERDA, a/k/a "Robert Klein"<br><br>ASHLEY R. LACERDA |
| 8/23/10 | VO Group TD Bank Account | Personal Savings Account | $40,000.00 | ADAM LACERDA, a/k/a "Robert Klein"<br><br>ASHLEY R. LACERDA |
| 8/18/11 | VO Group The Bank Account | Counter Withdrawal | $40,000.00 | ADAM LACERDA, a/k/a "Robert Klein"<br><br>ASHLEY R. LACERDA |
| 12/16/11 | VO Group The Cape Bank Account | Personal Savings Account | $40,000.00 | ADAM LACERDA, a/k/a "Robert Klein"<br><br>ASHLEY R. LACERDA |

In violation of Title 18, United States Code, Section 1956(h).

26

<u>COUNTS 36-39</u>

(Money Laundering)

1.    Paragraphs 1 through 5 and 7 through 16 of Count 1
of this Superseding Indictment are hereby realleged and
incorporated as though set forth in full herein.

2.    On or about the dates listed below, at
Pleasantville, in Atlantic County, in the District of New Jersey
and elsewhere, the defendant specified per count below did
knowingly engage in monetary transactions, specifically transfers
in and affecting interstate commerce of funds to a financial
institution within the United States, in criminally derived
property of a value greater than $10,000, which was derived from
specified unlawful activity, namely, conspiracy to commit mail
fraud and wire fraud, contrary to Title 18, United States Code,
Section 1349, as set forth in Count One:

| <u>COUNT</u> | DATE OF MONETARY <u>TRANSACTION</u> | <u>TRANSFER FROM:</u> | <u>INTO:</u> | <u>AMOUNT</u> | <u>RECEIVED BY</u> |
|---|---|---|---|---|---|
| 36 | 8/2/10 | VO Group TD Bank Account | Personal Savings Account<br><br>Personal Checking Account | $20,000.00 | ADAM LACERDA, a/k/a "Robert Klein"<br><br>ASHLEY R. LACERDA |
| 37 | 8/23/10 | VO Group TD Bank Account | Personal Savings Account | $40,000.00 | ADAM LACERDA, a/k/a "Robert Klein"<br><br>ASHLEY R. LACERDA |

27

| 38 | 8/18/11 | VO Group The Bank Account | Counter Withdrawal | $40,000,00 | ADAM LACERDA, a/k/a "Robert Klein"  ASHLEY R. LACERDA |
| 39 | 12/16/11 | VO Group The Cape Bank Account | Personal Savings Account | $40,000.00 | ADAM LACERDA, a/k/a "Robert Klein"  ASHLEY R. LACERDA |

       In violation of Title 18, United States, Code, Section 1957(a), and Title 18, United States, Code, Section 2.

28

## COUNTS 40 - 42

### (Mail Fraud)

1.    Paragraphs 1 through 5 and 7 through 16 of Count 1 of this Superseding Indictment are hereby realleged and incorporated as though set forth in full herein.

**The Unemployment Insurance System**

2.    The New Jersey Department of Labor and Workforce Development ("NJDOL") administered unemployment insurance benefits, commonly referred to as unemployment compensation ("UC"), to persons out of work through no fault of their own.

3.    As part of the qualification and filing process, UC claimants were obligated to file an initial claim with NJDOL. Claimants filed a claim by telephone or, in some instances, via the Internet.

4.    After a UC claim was deemed eligible, the NJDOL calculated a "weekly benefit rate" ("WBR") and "maximum benefit amount" ("MBA") for a claimant.  These amounts were paid to a UC claimant using a seven-day period beginning on a Sunday and ending on a Saturday.

5.    After meeting the initial requirements, a UC claimant had to meet the following eligibility requirements to maintain UC benefits:  (a) keep all scheduled appointments; (b) be able to work; © be available for work; (d) actively seek work; (e) not

29

refuse any offer of suitable work; and (f) claim weekly UC benefits by telephone or the Internet. After the claim was approved, payments were not made to the claimant until the claimant certified (requested payment) for each week the claimant wished to claim benefits. During each and every certification, the claimant was required to answer seven questions. How the seven questions were answered was the basis by which a request for payment was approved or denied. Depending on a certain answer, the claimant might have been required to participate in a hearing to determine whether the claim was approved or denied.

6. As part of the telephone/Internet certification process, UC claimants were required to file a claim for benefits every two weeks once they were initially deemed eligible for benefits. UC claimants were provided an instructional guide to assist them in completing the bi-weekly certification process. Contained within the instructional guide was a sample form called "Claim for Benefits." The form provided additional information to further assist the claimant with the telephone/Internet certification process.

7. During the bi-weekly certification process, UC claimants had to respond to a series of automated questions when filing their bi-weekly claim, regardless of filing method used (telephone or Internet). The questions asked the claimant to verify certain information related to the six eligibility

requirements set forth in Paragraph 5 of this Count.   The automated questions were designed to continue the claim process unless the claimant gave an answer that needed further explanation.   When a claimant provided an answer needing additional details, the claimant was asked additional automated questions, or the claimant was transferred to a NJDOL representative for assistance regarding the claim.   During the interaction with a NJDOL representative, the representative obtained additional details about the answer the claimant provided.   After hearing the information, the NJDOL representative made a determination about the validity of the UC claim.   In either circumstance, the bi-weekly claim was resolved, and if the claim was deemed valid, the UC claimant received by mail the next UC compensation check within 14 days.

8.   The bi-weekly certification process had seven questions related to the six eligibility requirements.   Question #5 asked the claimant, "Did you perform any commission or self-employment work, or were you entitled to holiday or vacation pay?"   If a claimant answered "YES" to this question, the claimant was asked to provide additional information about the work reported.   If the UC claimant filed the bi-weekly claim by telephone, the claimant was transferred to a NJDOL representative for further explanation.   If the UC claimant answered "NO" to question #5, the automated portion of the claim continued.

9.   Question #7 asked the claimant, "Did you work during the weeks claimed?"  If a claimant answered "YES" to this question, the automated system asked the claimant, "Did you work during the week ending XX-XX-XX?"  The automated system continued asking questions related to the claimant's amount of wages reported and the number of hours worked during the claim week.

10.  As part of the automated bi-weekly claim process, all UC claimants were asked to affirmatively certify the truthfulness of the claim.

**The Defendants' Schemes**

11.  From in or about the dates listed below, in the District of New Jersey and elsewhere, each defendant specified per count listed below devised and intended to devise a scheme to defraud the NJDOL, and to obtain money and property of the State of New Jersey by means of materially false and fraudulent pretenses, representations and promises.

**Manner and Means**

It was part of the scheme of each defendant specified per count listed below that:

12.  The defendant applied for unemployment benefits from the State of New Jersey by making periodic telephone calls or Internet requests for continued payment of UC benefits.

32

13.  The defendant falsely asserted that s/he was not currently employed.  In fact, the defendant worked at the VO Group.

14.  The defendant was awarded a weekly benefit as specified below.

15.  As a result of the information the defendant submitted, the NJDOL sent the defendant benefit checks through the U.S. Mail.

16.  The defendant made periodic telephone calls to an Interactive Claims Response System established by the NJDOL and falsely reported that s/he had not worked for the prior week or two weeks, when in fact, the defendant worked at the VO Group. As a result, the defendant received benefits to which s/he was not entitled as specified below.

17.  On or about the dates set forth below, in the District of New Jersey, and elsewhere, each defendant specified per count listed below, for the purpose of executing the scheme described above, and attempting to do so, knowingly caused to be delivered by mail according to the directions thereon, a Benefit Account Warrant Check from the NJDOL in Trenton, New Jersey to the defendant's address in New Jersey as described below for each count:

| COUNT | DEFENDANT | DATES OF SCHEME | DATE OF MAILING | AMOUNT | TOTAL BENEFITS RECEIVED TO WHICH DEFENDANT WAS NOT ENTITLED |
|---|---|---|---|---|---|
| 40 | ADAM LACERDA, a/k/a "Robert Klein" | 4/4/09 - 5/19/09 | 5/19/09 | $1,034.00 | $2,958.00 |
| 41 | BRIAN CORLEY, a/k/a "John Corley" | 4/14/10 - 11/2/10 | 10/27/10 | $1,168.00 | $16,936.00 |
| 42 | IAN RESNICK | 8/28/10 - 1/10/11 | 9/29/10 | $540.00 | $10,800.00 |

In violation of Title 18, United States Code, Section 1341, and Title 18, United States Code, Section 2.

34

## COUNTS 43-44

### (Wire Fraud)

1.    Paragraphs 1 through 5 and 7 through 16 of Count 1 and paragraphs 1 through 16 of Counts 40-42 of this Superseding Indictment are hereby realleged and incorporated as though set forth in full herein.

2.    On or about the dates set forth below, in the District of New Jersey, and elsewhere, each defendant specified per count listed below, for the purpose of executing the scheme described in paragraphs 2 through 16 of Counts 40-42 above, and attempting to do so, did knowingly and with fraudulent intent transmit and cause to be transmitted by means of wire communications in interstate commerce the unemployment compensation benefit payment from the NJDOL in Trenton, New Jersey to the defendant's bank account in New Jersey as described below for each count:

| COUNT | DEFENDANT | DATES OF SCHEME | DATE OF WIRE COMMUNI-CATION | THROUGH | TO | AMOUNT | TOTAL BENEFITS RECEIVED TO WHICH DEFENDANT WAS NOT ENTITLED |
|---|---|---|---|---|---|---|---|
| 43 | ASHLEY R. LACERDA | 2/27/10-7/26/10 | 6/1/10 | Maine | New Jersey | $774.00 | $7,004.00 |
| 44 | GENEVIEVE MANZONI | 10/9/10 - 7/9/11 | 10/25/10 | Maine | New Jersey | $1,200.00 | $9,582.00 |

In violation of Title 18, United States Code, Section 1343, and Title 18, United States Code, Section 2.

35

## FIRST FORFEITURE ALLEGATION

1. The allegations contained in Counts 1-4, 6-11, 13, 21-24, 26-28, 30-31, and 40, and 43 of this Superseding Indictment are hereby realleged and incorporated by reference for the purpose of noticing forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(D) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

2. The United States hereby gives notice to defendant ADAM LACERDA, a/k/a "Robert Klein," charged in Counts 1-4, 6-8, 10-11, 13, 22-23, 28, and 35-40 of this Superseding Indictment, and ASHLEY R. LACERDA, charged in Counts 1, 9, 21, 24, 26-27, 30-31, 35-39, and 43 of this Superseding Indictment, that, upon their conviction of any such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Sections 981(a)(1)(D) and 982(a)(2)(A) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, including but not limited to a money judgment in the amount of at least $3,000,000.

3. If any of the above-described forfeitable property, as a result of any act or omission of defendants ADAM LACERDA, a/k/a "Robert Klein," and ASHLEY R. LACERDA:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of defendants ADAM LACERDA, a/k/a "Robert Klein," and ASHLEY R. LACERDA up to the value of the forfeitable property described in paragraph 2.

37

## SECOND FORFEITURE ALLEGATION

1.   The allegations contained in Counts 1 through 44 of this Superseding Indictment are hereby realleged and incorporated by reference for the purpose of noticing forfeitures pursuant to Title 18, United States Code, Section 982.

2.   The United States hereby gives notice to defendants ADAM LACERDA, a/k/a "Robert Klein," and ASHLEY R. LACERDA, charged in Counts 35 through 39 of this Superseding Indictment, that, upon conviction of any such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982, of all property involved in each offense of conviction in violation of Title 18, United States Code, Section 1957, and all property traceable to such property, including but not limited to a sum of money equal to at least approximately $305,413.06 in United States currency.

3.   If any of the above-described forfeitable property, as a result of any act or omission of defendants ADAM LACERDA, a/k/a "Robert Klein," and ASHLEY R. LACERDA:

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third party;

   c.   has been placed beyond the jurisdiction of the court;

38

     d.  has been substantially diminished in value;
or

     e.  has been commingled with other property
which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18,
United States Code, Section 982, to seek forfeiture of any other
property of defendant ADAM LACERDA, a/k/a "Robert Klein," and
ASHLEY R. LACERDA up to the value of the forfeitable property
described in paragraph 2.


         A TRUE BILL


        ( ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
          FOREPERSON


_____
PAUL J. FISHMAN
UNITED STATES ATTORNEY


         39

CASE NUMBER:   2010R00780, 2012R01008, 2012R01010, 2012R01007

## United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

ADAM LACERDA,
a/k/a "Robert Klein,"
ASHLEY R. LACERDA,
IAN RESNICK,
STEVEN COX,
a/k/a "Steve Coluzzi,"
ALFRED GIORDANO,
a/k/a "Alex Jordan,"
FRANCIS SANTORE,
a/k/a "Frank Martin,"
BRIAN CORLEY,
a/k/a "John Corley,"
JOSEPH DIVENTI,
JOSEPH SAXON,
and
GENEVIEVE MANZONI

# SUPERSEDING INDICTMENT FOR

Title 18, United States Code,
Sections 1341, 1343, 1349, 1956(h), 1957(a), and 2

A True Bill,

Foreperson

**PAUL J. FISHMAN**
U.S. ATTORNEY
NEWARK, NEW JERSEY

ALYSON M. OSWALD
R. DAVID WALK, JR.
ASSISTANT U.S. ATTORNEYS
(856) 757-5026

USA-48AD 8
(Ed. 1/97)