# JACOBS SINGER KIVITZ & HERMAN LLC

ATTORNEYS AT LAW

RALPH A. JACOBS

856-427-0330

rjacobs @ jskhlaw.com

34 TANNER STREET
HADDONFIELD, NJ 08033

_____

PHILADELPHIA OFFICE:

1525 LOCUST STREET
12th FLOOR
PHILADELPHIA, PA 19102

215-732-2650

26 July 2013

Hon. Noel L. Hillman                               FILED VIA ECF
U.S. District Judge
U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

Re:   United States v. Lacerda, et al.
       (D.N.J. Crim. No. 12-303 (NLH))

Dear  Judge Hillman:

Please accept this letter as Defendant Genevieve Manzoni's memorandum of law in support of her oral motion for a mistrial based upon the testimony of the FBI case agent.  The legal basis for the motion is that the agent's "overview" testimony went well beyond the legitimate bounds of such testimony and repeatedly contained inadmissible hearsay, improper opinion testimony, and impermissible vouching.  The facts urged below in support of this motion are based upon counsel's notes and best recollection.

1. The case agent offered extensive hearsay and opinion testimony on important issues.  The issue presented here first arose when the case agent was asked to identify certain checks which the prosecution intended to link to the crimes charged by means of specific  live testimony later in the trial.  In questions and answers, the checks

Hon. Noel L. Hillman
26 July 2013
Page 2

were referred to as checks from "victims" which drew at least one defense objection.   At

some point, the Court explained its rationale for allowing such testimony, but cautioned

the government to carefully limit the scope of the case agent's testimony to appropriate

matters.

As the case agent's overview testimony ensued, however, the government

elicited more and more testimony from the agent which went far beyond providing

necessary context for specific investigative actions such as the search and went far

beyond identifying specific documents that would be the subject of further testimony by

witnesses with actual knowledge.  Instead the agent's testimony began to assume the

character of a full blown narrative of the government's version of the events at issue,

complete with the agent's conclusions and opinions on criminality.  For example, the

agent was asked whether he could identify certain items as coming from "defendant's

fraudulent scheme" or words to that effect.  Asking the agent to sort checks into those

which he had concluded were connected with criminal activity and those as to which he

had not come to such a conclusion is exactly the sort of opinion on defendant's guilt

which the law prohibits.  The defense objected to the testimony on precisely that basis.

The government sought to ameliorate the prejudicial impact of this

testimony by adopting, for a time, the phrase "allegedly fraudulent scheme," although the

testimony was also interlaced with the agent's reference to "intended victims."  The agent

was asked to explain various aspects of the defendants' conduct, such as a particular

"sales pitch" as though he were a witness with actual knowledge.  The overall impression

Hon. Noel L. Hillman
26 July 2013
Page 3

of the agent's overview testimony was that of an opening statement cloaked with the

power of being based on an extensive investigation.  Particularly harmful to the

defendants' right to a fair trial is that these broad brush conclusions and opinions were

presented to the jury as actual evidence which the jury could consider, in contrast to the

careful warning the jury is given when similar narratives are given by counsel in opening

statements.

The prosecution's use of the agent's "overview" testimony, which

consumed the first two days of testimony, far exceeded the express limits the Court

placed on it.  Ignoring the Court's instruction not to elicit the agent's opinion on guilt or

fraud, the prosecutor invited the agent to engage in the most rank speculation as to the

guilty state of mind of individual defendants.  For example, the FBI agent was asked to

give his opinion, based on the inadmissible hearsay he had gathered in his two and a half

year investigation, as to Adam Lacerda's motive in a particular situation, in response to

which the agent replied in essence that he had concluded that Adam Lacerda did not want

to leave a paper trail because he was lying.

The prosecution elicited testimony about the state of mind of other

defendants, sometimes couching such improper opinion testimony as the agent's

conclusion from his investigation or his "understanding."   For example, the agent was

allowed to offer as factual testimony his unsupported speculation about Genevieve

Manzoni's intent in keeping copies of certain papers at her desk.

Hon. Noel L. Hillman
26 July 2013
Page 4

The impact of the opinion and synthesized hearsay presented as though they were facts established by a comprehensive investigation far transcended any individual question and answer or any individual fact in dispute.  What has happened here is that for two full trial days at the very outset of the case, the jury was presented with the prosecution's conclusions and inferences cloaked as evidence.  The conclusions and inferences to be drawn from the documents and fact witnesses are matters for the jury.  The prosecution should not have been allowed to usurp that crucial function of the jury system under the benign label of "overview."

Compounding the substantial prejudice caused by the case agent's testimony, the prosecutor had the case agent tell the jury that his opinions and conclusions had been based on his extensive investigation including his hundreds of hours of victim interviews.  In other words, the prosecution abandoned all pretense of using the case agent's testimony merely to summarize objective facts, such as an accounting expert might do in presenting summaries of complex financial transactions that were already in evidence.  Instead, the prosecution itself presented the agent's testimony to the jury as  based on his investigative and evaluative actions.

Some of the most objectionable hearsay was couched in terms of the agent's opinion that there was "no evidence" of a particular matter.   This testimony was nothing more nor less than the case agent saying that he had conducted a thorough investigation and had reached a factual conclusion which the jury should accept as actual evidence.  It is one thing for an agent to be asked to review hundreds of checks and report

Hon. Noel L. Hillman
26 July 2013
Page 5

whether there were any checks payable to ABC Company, or to review voluminous phone records and report whether there were any phone calls to a particular number. But this was testimony of a very different and wholly inappropriate character. The jury understood that this agent had interviewed virtually all of the participants in the events at issue. Thus, his statement that there was "no evidence" of something was tantamount to an announcement that the FBI had concluded that it had not occurred.

This "no evidence" technique of communicating the results of the FBI investigation was used on very important matters, not peripheral issues. For example, at one point the FBI case agent told the jury that no customer was told that there would be a foreclosure. At another point, the agent told the jury that the VO Group had no communications with banks. Essentially, the agent merely announced the government's view of what had happened – which the jury understood to be based on the dozens or hundreds of interviews the agent had conducted -- and it was now up to the defense to prove otherwise. Under the innocuous label of "overview" testimony, the prosecution turned on its head the most fundamental principle of our criminal jurisprudence.

2. The case agent's opinions, conclusions, summaries of hearsay and presentation of the prosecutions case theory were inadmissible and prejudicial. The various fundamental prejudicial errors in the challenged overview testimony in this case are succinctly explained by the First Circuit in a recent opinion addressing precisely this controversial "overview testimony" technique:

Hon. Noel L. Hillman
26 July 2013
Page 6

As we have now said many times, overview testimony is problematic when it "consists of declarations by a witness—commonly a law enforcement officer involved in the investigation at issue—presented early during trial to describe the government's general theory of the case." *United States v. Vázquez–Rivera,* 665 F.3d 351, 356 (1st Cir.2011). Such testimony commonly "relie[s] heavily on information told to [the witness] by others—i.e., on inadmissible hearsay—rather than on ... personal knowledge," *United States v. Meises,* 645 F.3d 5, 14 (1st Cir.2011), and often "preview[s] the testimony of other witnesses," *id.* at 14 n. 13. In addition to the hearsay problem, overview testimony of this sort is "especially problematic because juries may place greater weight on evidence perceived to have the imprimatur of the government." *United States v. Flores–de–Jesús,* 569 F.3d 8, 17 (1st Cir.2009) (quoting *United States v. Casas,* 356 F.3d 104, 120 (1st Cir.2004)) (internal quotation marks omitted).

The prejudicial effect of this kind of testimony is heightened when an overview witness is permitted to testify to the ultimate issue in a criminal trial—the defendant's culpability. *See Meises,* 645 F.3d at 18 (noting that it is "patently unfair" for a case agent to testify to defendant's culpability). Furthermore, testimony regarding culpability is a form of lay opinion that will rarely, if ever, meet the requirements of Federal Rule of Evidence 701. *See* Fed.R.Evid. 701(b); *Vázquez–Rivera,* 665 F.3d at 358.

*United States v. Rodriguez-Adorno*,  695 F.3d 32, 37-38 (1st Cir. 2012).   The testimony

in the current case contained all of the pitfalls identified in *Rodriquez-Adorno*, including

massive reliance on inadmissible hearsay, and inadmissible lay opinion testimony

particularly on criminality and defendant's state of mind.

The Fifth Circuit has couched its negative views of this sort of "overview"

testimony even more sharply:

This Court has never had the opportunity to address **the use of an overview witness where the witness is put on the stand to testify before there has been any evidence admitted for the witness to summarize. We unequivocally condemn this practice as a tool employed by the government to paint a picture of guilt before the evidence has been**

Hon. Noel L. Hillman
26 July 2013
Page 7

> **introduced.** Permitting a witness to describe a complicated government program in terms that do not address witness credibility is acceptable. However, allowing that witness to give tendentious testimony is unacceptable. Allowing that kind of testimony would greatly increase the danger that a jury "might rely upon the alleged facts in the [overview] as if [those] facts had already been proved," or might use the overview "as a substitute for assessing the credibility of witnesses" that have not yet testified. _Scales_, 594 F.2d at 564. We hold, therefore, that the district court abused its discretion in allowing the government to utilize Martin as an overview witness to testify to issues in dispute.

_United States v. Griffin,_ 324 F.3d 330, 349 (5th Cir. 2003) (emphasis added).

An additional problem in this case is that the jury was told that the agent's testimony and conclusions were based not on his own personal knowledge, but upon numerous interviews, which runs roughshod over the Confrontation Clause.  _See United States v. Lopez_, 340 F.3d 169, 17-77 (3d Cir. 2008) (reversing for impermissible hearsay); s_ee generally Crawford v. Washington_, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).   Presenting the inadmissible hearsay as a "summary" or a basis for an "understanding" or as a conclusion that there was "no evidence" of a certain matter does not obviate the Confrontation Clause concern; it heightens it.  If the agent were only to have previewed the ultimate testimony of an eventual trial witness, the error might turn out to be harmless if the declarant were ultimately cross-examined before the jury.  In this case, however, the jury was presented in capsule form with the hearsay testimony of dozens or hundreds of nameless, faceless witnesses whose statements were synthesized and vouched for by an FBI agent, but who will never face individual cross-examination as the Constitution requires.

Hon. Noel L. Hillman
26 July 2013
Page 8


Joining the growing tide of judicial criticism of this latest trend in

prosecutorial trial theatrics, the Second Circuit has roundly criticized the sort of broad,

opinion-laced "overview" testimony in dispute here.

> We begin by identifying the overarching concern raised by Agent
> Klemick's testimony. By stating that, in his opinion, Garcia was a "partner
> with Francisco Valentin in receiving cocaine from Walmer DeArmas,"
> Trial Tr. at 98, Klemick was essentially telling the jury that he had
> concluded that Garcia was guilty of the crimes charged. Although opinion
> testimony, whether offered by a lay witness pursuant to Fed.R.Evid. 701,
> or by an expert pursuant to Fed.R.Evid. 702, is not inadmissible simply
> "because it embraces an ultimate issue to be decided by the trier of fact,"
> Fed.R.Evid. 704, it is not properly received "merely [to] tell the jury what
> result to reach," *id.,* Advisory Committee Notes on 1972 Proposed Rules;
> *see* 4 *Weinstein's Federal Evidence* § 701.05 (2d ed.2004) (noting that
> courts should be wary of opinion testimony whose "sole function is to
> answer the same question that the trier of fact is to consider in its
> deliberations"). Indeed, the purpose of the foundation requirements of the
> federal rules governing opinion evidence is to ensure that such testimony
> does not so usurp the fact-finding function of the jury. *See* Fed.R.Evid.
> 704, Advisory Committee Notes on 1972 Proposed Rules.

> Mindful of this concern, this court has, in two recent cases—both
> decided after the trial of this case—ruled it error to allow law enforcement
> witnesses to express opinions as to defendants' culpability based on the
> totality of information gathered in the course of their investigations. *See*
> *United States v. Grinage,* 390 F.3d at 749–51 (rejecting receipt of such
> evidence as lay opinion under Rule 701); *United States v. Dukagjini,* 326
> F.3d at 54 (rejecting receipt of such evidence as expert opinion under Rule
> 702). The circumstances of this case warrant no different conclusion. They
> do, however, afford us an opportunity to discuss the particular foundation
> requirements of Rule 701 and to reject the argument advanced by the
> government in its brief that a case agent may offer, at the beginning of a
> trial, a lay opinion providing a summary overview of anticipated evidence.

*United States v. Garcia*, 413 F.3d 201, 210-11 (2d Cir. 2013)

The Third Circuit, while not yet having issued a blanket condemnation of

Hon. Noel L. Hillman
26 July 2013
Page 9


this broad "overview" technique, clearly is concerned.  In a not-for-publication opinion, a

panel of the Court acknowledged the line of authority cited above and took pains to

distinguish the case before it from the improprieties identified by the First and Fifth

Circuits.

> Specifically, in regard to Figaro's argument that Trooper Hutson's
> testimony constituted improper "overview testimony," we note first that
> Trooper Hutson's testimony was not of the sort described by the two
> Courts of Appeals to have addressed the propriety of "overview
> testimony." *See United States v. Casas,* 356 F.3d 104, 117–24 (1st
> Cir.2004) (DEA Agent testimony describing scope of drug smuggling
> "organization" and providing conclusory testimony as to the identity of the
> members of the "organization" was unacceptable overview testimony);
> *United States v. Griffin,* 324 F.3d 330 (5th Cir.2003) (FBI Agent
> testimony using chart and providing overview of case against defendants
> improperly allowed). In the two cases cited by Figaro, the testimony at
> issue provided a comprehensive view of the case against the defendants at
> the start of testimony and included conclusory statements as to the
> identities of the participants of the conspiracies. Trooper Hutson's
> testimony does bear some similarity to that discussed in *Casas* and *Griffin*
> in that it came from a law enforcement official at the start of the trial. It is,
> however, distinguishable because, rather than telling the story of the
> conspiracy according to the Government, it told the story of Trooper
> Hutson's investigation in the case. Trooper Hutson did not attempt to
> explain the operations of the alleged conspiracy, nor did he identify the
> members of the conspiracy. Although Trooper Hutson did use the word
> "coconspirators," he did not associate the label with anyone in particular
> as did the witness in *Casas.*

*United States v. Figaro,* 126 Fed.Appx. 75, 78, 2005 WL 678757 (3d Cir 2005) (not for

publication).  Crucially, the Third Circuit took pains to distinguish the facts before it from

the prejudicial aspects identified in the cited cases, concluding that the testimony neither

gave a comprehensive overview of the case nor offered conclusions on key issues.  (In

*Figaro*, the key issue was the identities of the members of the drug operation.)   In the

Hon. Noel L. Hillman
26 July 2013
Page 10

present case, the agent's testimony was sweeping and his opinions focused on key issues.[1]

Permissible overview testimony "must be limited to a description of the investigation, and may not shade into a statement of the government's theory of the case or conclusory statements about the defendant's culpability." *Rodriquez-Adorno, supra*, 695 F.3d at 38. The "overview" evidence in this case not only constitutes inadmissible hearsay but is an improper attempt to convey a message to the jury that it should accept key elements of the prosecution's case because a highly regarded law enforcement agency conducted a thorough investigation and came to that conclusion. Such vouching is improper. *United States v. Gomes*, 642 F.3d 43, 47 (1st Cir. 2011).

3. Mistrial is the only effective remedy. Because the errors complained of above were so pervasive, the remedy of striking portions of the case agent's testimony and giving a strong cautionary instruction would not remedy the prejudice. Most of the case law on the necessity of a mistrial remedy arises on appeal, when the reviewing court has before it a complete trial record. In that context, the court considers how pervasive was the error, how effective the limiting instructions or other remedial action had been, and the strength of the overall evidence. Most of the reported cases concern an isolated comment or a particular item of evidence which could easily be identified in a curative

---

[1] In a drug conspiracy typically there is no dispute that a crime was committed; the question is who participated. In contrast, in a fraud case, identity is rarely at issue; the question is who said what and with what knowledge and intent. Thus, the agent's pronouncement here that none of the customers were told about foreclosure (and this would include the customers Genevieve Manzoni spoke to) goes directly to a central issue in the case).

Hon. Noel L. Hillman
26 July 2013
Page 11

instruction, as opposed to the errors complained of here which were woven throughout a

wide ranging and extensive presentation.

        In determining whether to grant a mistrial, the Court should consider the

scope of the improper evidence, its context within the trial, the potential effect of curative

instructions. *See United States v. Rivas*, 493 F.3d 131, 140 (3d Cir.2007).  Here, not

only was the improper evidence extensive but it came at the very outset of trial where it

provided the lens through which the jury will absorb the real evidence in the weeks to

come.  It is hard to imagine an instruction that could cure this.  To strike all of the agent's

opinions and summaries of hearsay is not only unwieldy but also might simply

underscore in the jury's mind the fact that the FBI did conduct an extensive investigation

and did conclude the defendants were all guilty.

        This case contrasts markedly with situations in which other measures

besides a mistrial were deemed appropriate. *E.g.*, *United States v. Self*, 681 F.3d 190,

199 (3d Cir. 2012) (no mistrial where improper evidence was "brief, isolated, and

unsolicited by the prosecutor"). *United States v. Zehrbach,* 47 F.3d 1252, 1267 (3d Cir.

1995) (no mistrial based on one isolated comment).  *Compare  United States  v. Morena*,

547 F.3d 191, 194 (3d Cir. 2008)  (pervasiveness of erroneous evidence a factor

supporting reversal).

        Appellate cases also consider the strength of the evidence when

determining whether the failure to grant a mistrial was reversible error, but at this stage of

the proceedings, an assessment of the strength of the evidence is immaterial or, if it is to

Hon. Noel L. Hillman
26 July 2013
Page 12

be considered at all, highly favors mistrial.  If this Court were to consider the evidence of

record at this point in the trial, there is not a scrap of evidence of Genevieve Manzoni's

guilt.  If the prosecution were to ask the Court to engage in an assessment of what the

evidence might ultimately be, the result would be -- after some sort of mini-trial -- that

the evidence against Ms. Manzoni would remain weak and speculative.  Besides being

unwieldy, an effort to avoid a mistrial based on a speculative assessment of the ultimate

evidence is barred by the presumption of innocence that applies at this stage, in contrast

to the perspective of a post-conviction appellate review.  For this reason, the decision on

a post-conviction motion in *United States v. Siyam*, 2010 WL 5476744 (D.N.J. 2010) is

not to the contrary.

Thus, all of the relevant factors favor granting a mistrial.

Respectfully,

/s  Ralph A. Jacobs

Ralph A. Jacobs
Counsel for Defendant Genvieve Manzoni

cc:  All counsel (via ECF)